ICKLER v. MULLEN.

1. VENDOR AND PURCHASER—LAND CONTRACTS—CONSTRUCTION.
Where a contract for the sale of lands described therein contained a provision that the purpose of the contract was to sell the same lands as were acquired and held by the seller by virtue of a deed to him, such provision was surplusage, the lands described in the contract being those described in the deed.

2. SAME—LAND CONTRACTS—ABSTRACTS—TITLE.
Where a contract relating to the sale of lands described therein and for a warranty deed provided that the purpose of the contract was to sell the same lands as were

acquired and held by the vendor by virtue of a certain deed to him which described the same lands as were described in the contract, and the abstract furnished was accepted by the buyer as showing good title in the seller, such provision as to the purpose of the contract did not constitute a cloud on the title as requiring only a conveyance of such title as the seller had by such deed.

3. SPECIFIC PERFORMANCE—EVIDENCE—SUFFICIENCY.

Where a memorandum for the sale to plaintiff of described lands provided for a first payment thereon within a designated time after delivery of an abstract showing merchantable title in defendant and for the execution of a contract providing for further certain payments of the purchase price, within which time defendant furnished such abstract, which plaintiff accepted, and a form of contract in accord with such memorandum, which plaintiff refused to accept, and nothing further was done by the parties for two months or until after defendant had secured another purchaser, while time of performance was not made the essence of the contract, the transaction was closed on plaintiff's refusal to accept the contract offered, and consequently plaintiff was not entitled to specific performance.[1]

4. SAME—NOT REMEDY OF RIGHT—DISCRETION OF COURT.

Remedy by specific performance is not a remedy of right but rests in the sound discretion of the court, and the case must be clear before that discretion is moved.

Appeal from Oakland; Smith, J. Submitted April 5, 1917. (Docket No. 53.) Decided May 31, 1917.

Bill by John Ickler against Robert J. Mullen for the specific performance of a land contract. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Douglas, Eaman & Barbour*, for plaintiff.

*Albert McClatchey*, for defendant.

FELLOWS, J. On November 26, 1915, the defendant

---

[1]Authorities discussing the question of uncertainty as to time, as affecting right to specific performance, are collated in a note in 2 L. R. A. (N. S.) 221.

signed a paper acknowledging receipt from plaintiff of $25 to apply on the purchase of 10 acres of land situated in Royal Oak township, Oakland county. The purchase price was $3,000, of which sum, it was recited in the paper, $300, including the sum paid, was to be paid within 15 days after the delivery of an abstract, certified to date showing good and merchantable title in defendant; a land contract was to be executed providing for annual payments of $100 or more with interest at 6 per cent. There was no provision for immediate possession. Plaintiff had the right to a deed when $1,000 on the purchase price was paid, and could give back a mortgage, bearing 5 per cent. interest, for the balance, but did not obligate himself to carry out this provision. In fact, there were no express terms in the instrument obligating the plaintiff to the performance of anything and he did not sign it. This instrument is variously called in the record and briefs a "contract," an "option," an "option contract," and an "option upon consideration." In the view we take of the facts appearing in the record it becomes unnecessary to fix its exact status. Within a few days thereafter, an abstract was furnished and the title pronounced satisfactory to plaintiff, and at his suggestion the parties got together to execute the land contract and close up the deal. At this first conference, there seems to have been more effort made to modify the terms of this writing than to carry out its provisions. Plaintiff wanted to take in on the deal a Mr. Moore, and this was agreed to by defendant. Plaintiff insisted that about $500 worth of lumber went with the land. Defendant denied this, and insisted that there should be a rider attached to the contract, showing that the lumber belonged to him and that he had a right to remove it from the premises. Defendant wanted the right to put a new mortgage on the land in case payment of one then existent was required.

Plaintiff did not want to consent to this, but either at
this, or a later conference, agreed that he would pro-
cure for defendant a loan of $300 in case it became
necessary to take up the mortgage, but defendant later
withdrew his insistence on the mortgage provision.
The contract drawn by defendant's attorney contained
an error in description, and it was agreed that it should
be redrafted and another conference held.

At this second conference, plaintiff wanted one-half
of the lumber left on the premises, and on defendant's
refusal wanted to buy one-half of it; but defendant,
while willing to sell all of it, declined to sell part. The
parties did not succeed in getting together at this
meeting. It is not clear the number of conferences
that took place with reference to the matter. Defend-
ant was not present at all of them, his employer hav-
ing objected to his taking too much time off, and his
attorney represented him. Suffice to say that on De-
cember 20th, which seems to have been the fifteenth
day after furnishing the abstract, a conference was
held at the office of defendant's attorney. The attor-
ney had prepared a land contract, more favorable to
plaintiff than the writing of November 26th called for,
in that plaintiff was given immediate possession of the
premises. It ran to plaintiff and Moore, as the parties
had agreed. There were in this contract none of the
clauses or modifications which had caused the previous
disagreements. The attorney had, however, prepared
a memorandum setting at rest the question as to the
ownership of the lumber, and made it a rider on the
contract. The contract, we think, fully complied with
the terms of the original writing, except that it was
more favorable to plaintiff, as stated above. Plaintiff
objected to this contract, and about two hours were
consumed in its discussion. There was a clerical mis-
take in the date of a deed given by one Carew, which
could have been easily remedied. The other objection

plaintiff claims he made was that the contract contained the following words after the description:

"* * * The purpose of this contract being to sell to second parties the same land that the first party acquired and holds by virtue of a deed by Edward Carew,·dated February 18, 1911, and recorded in Liber 241 on page 186, Oakland County Records."

This language was undoubtedly surplusage, as the land described in the contract was the same land described in the deed from Carew to the defendant. This deed does not recite that Carew was an unmarried man, and plaintiff claims objection was then made to the title and to this clause of the contract, and it is here urged that he was justified in the objection he made to this clause, that the language above quoted from the contract had reference to and might be construed as agreeing to convey only the title that Carew conveyed by his deed, at least that it would cloud the title. But, as we have already stated, the abstract had been submitted to plaintiff before any negotiations as to the form of the contract was taken up and had been pronounced satisfactory. Defendant's testimony and that of his attorney denies that plaintiff objected at any time to the title, and no question of title is made in the bill. Beyond that, the language used could not bear the construction claimed. The lands, not the title, contracted to be sold, were the lands acquired by the Carew deed, and the contract expressly required a "warranty deed of said described lands free and clear of and from all liens and incumbrances."

This last conference consumed some two or three hours, and plaintiff persistently refused to accept the contract prepared by defendant's attorney. It was not until the conference had been protracted long beyond lunch hour that plaintiff produced from his pocket a contract and asked defendant's attorney to read it and see what was the matter with it. We are unable to

discover any substantial difference between this contract and the one prepared by defendant's attorney. Defendant's attorney declined to read it, as he insisted the contract offered complied with the memorandum of November 26th, and it was beyond his lunch time and he could spend no further time with the matter. The conference then ended. That evening, at the request of his client, defendant's attorney called up plaintiff and asked him if there was not some way they could get together and close up the deal, but was unable to make any arrangements, or get any satisfaction from him.

We are satisfied from the testimony in the case that the agreed price of the land in question was at the time of the transaction its fair value; it was not a bargain, but defendant was then anxious to close up the deal, as the agreed price was more than he had paid for it. Nothing further was done by plaintiff, except to secure the recording of the memorandum, for nearly two months and until after the land had materially increased in value, and defendant had made a verbal bargain to sell to other parties, when this bill was filed for specific performance.

It will not be necessary to consider the interesting legal questions, discussed in the briefs filed by the parties, as we are satisfied on the facts the plaintiff is not entitled to prevail. While time of performance was not made the essence of the contract, and might be extended by parol (*Frazer* v. *Hovey*, 195 Mich. 160 [161 N. W. 887]), there was a time fixed for performance, and within that time, and practically at its close, defendant tendered performance, and it was refused, and the parties made no arrangements for any extension of time, or for further conference, and plaintiff, that evening, when requested, declined to enter further negotiations to close the deal. We think the parties then regarded the transaction at an end. The time of

performance expired; for nearly two months thereafter, plaintiff made no effort to comply on his part, or to obtain any extension of time, or to keep the negotiations alive, but declined so to do; and defendant sought and secured another purchaser for the premises.

Remedy by specific performance is not a remedy of right, but rests in the sound discretion of the court. The case must be clear before that discretion is moved. In the instant case, we are not satisfied that plaintiff has made his right so clear as to entitle him to this relief; but, on the contrary, we are satisfied that the evidence preponderates in favor of the defendant.

The decree of the court below will therefore be affirmed, with costs to defendant.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.